JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Daniel Oberacker ("Oberacker"; d.o.b. August 3, 1969) appeals on a delayed basis from the trial court finding him to be a sexual predator. For the reasons adduced below, we affirm in part and remand in part.
 {¶ 2} A review of the record on appeal indicates that Oberacker pled guilty on February 14, 2000 to two counts of Rape (a first degree felony under the pre-Senate Bill 2 version of R.C. 2907.02), committed over a period of several years, between 1992 and 1995, and which involved two adolescent female victims who were between the ages of eleven and twelve when the offenses first began. Appellant concedes that one of the victims was the daughter of his then live-in girlfriend (this victim's initials are "J.R."), and the other victim was his niece (this victim's initials are "J.S."). See appellant's brief at 1. As part of the plea bargain the court nolled four additional counts of Rape involving one of the victims.
 {¶ 3} The presentence investigation report indicated that Oberacker, despite having a history of driving under the influence convictions and admitting to drinking a six-pack of beer per day on two days each week, denied having a substance abuse problem or any mental health problems, denied responsibility or guilt for the offenses, and denied being attracted to younger women.
 {¶ 4} Oberacker was sentenced to 8 to 25 years on each of the two counts with the sentences to run consecutive to one another. The court also determined at the sentencing hearing, subsequent to evidence being taken, that Oberacker was a sexual predator and subject to registration requirements.
 {¶ 5} On April 18, 2000 Oberacker filed a notice of appeal from the sexual predator classification, arguing, in part, that the court had not provided notice of the sexual predator classification hearing. This court reversed and remanded the matter on the grounds that the trial court had indeed failed to provide Oberacker with notice of the hearing. See State v. Oberacker (Mar. 22, 2001), Cuyahoga App. No. 77876, 2001 Ohio App. LEXIS 1300.
 {¶ 6} On remand, the trial court granted Oberacker's motion to have an independent psychological assessment performed and his motion to receive copies of the entire criminal file.
 {¶ 7} On January 17, 2002 the trial court conducted the second sexual predator classification hearing.
 {¶ 8} At this second hearing, defense counsel stated that the defense had been given adequate time and notice within which to prepare for the hearing, that the defense waived any formalities and wanted to proceed. Tr. 4-5.
 {¶ 9} The state proffered the following five exhibits at the hearing: (1) the presentence report which was prepared for the original 2000 sentencing hearing; (2) a copy of the transcript from the original sexual predator classification hearing, which contains therein testimony from the elder victim, namely J.S.; (3) a statement authored by the younger victim, J.R.; (4) the police statement authored by the elder victim, J.S.; and, (5) the psychiatric report on Oberacker which was prepared on January 2, 2002 by Dr. Aronoff of the Court's Psychiatric Clinic. These exhibits, without objection by the defense, were admitted by the court into evidence.
 {¶ 10} Dr. Aronoff's report indicated, in part, the following: (1) Oberacker's intelligence quotient was tested in April of 2000 as being 126, which score was within the 96th percentile of those other individuals completing the test; (2) in addition to alcohol use, Oberacker admitted to a history of drug use and experimentation over the years, some of it intravenous, including cocaine, marijuana, LSD, Dilaudid, and psilocybin; (3) while Oberacker did complete a sexual offender class while incarcerated, the instructor noted that Oberacker displayed no motivation to learn class material, did not participate in class, and his attitude was poor; (4) with regard to the matter of rape myths raised in the prison sex offender class, Oberacker endorsed the belief that victims of rape are somewhat to blame for the rape, and that women who frequently go to bars are mainly looking to have sex; (5) with regard to the matter of child molestation myths raised in the prison sex offender class, Oberacker endorsed a neutral response to the belief that if a young child stares at his genitals, it means that the child likes what he/she sees and is enjoying watching the genitals, and if a 13 year old girl, or younger, flirts with an adult, it means that he/she wants to have sex with that adult; (6) the Static-99 result indicated a risk of sexually reoffending over time due to the victims being unrelated to Oberacker, with a low risk of 7% for sexually reoffending up to fifteen years after his release, and an 18% risk of violently sexually reoffending up to fifteen years after his release; (7) on the Minnesota Sex Offender Screening Tool Revised Oberacker scored an 8, indicating a 70%, or high risk, of reoffending within six years of release from prison, and this risk could decrease over time to 45% (a moderate risk of reoffending) upon further completion of sexual and/or substance abuse programs; (8) additional factors which indicate a heightened risk of sexually reoffending include Oberacker's partial denial of guilt for these offenses, self-reported anger issues, and distortions concerning child sexuality; (9) factors which may decrease the risk of sexually reoffending include Oberacker's partial admission of guilt regarding the offenses herein and his open attitude toward sex offender treatment; (10) when asked what he had obtained from the prison sex offender program, Oberacker responded with a lack of insight, "I didn't realize how much abuse was going on in the world. What I did was wrong. I'm sorry for what happened. I learned a lot about communicable diseases."; (11) the result of the Abel Assessment for Sexual Interest indicated that Oberacker has a "significant sexual interest in adolescent and adult females."; (12) Oberacker currently presented the following risk factors which correlated with sexual offense recidivism: a rape conviction, a previous conviction for domestic violence, and one of the victims was unrelated to him. The defense proffered the psychological report on Oberacker which was prepared by Dr. Kaplan and a letter from Oberacker's wife. Both of these were admitted into evidence.
 {¶ 11} Dr. Kaplan testified at the hearing for the defense, stating that, in addition to reviewing the evidence relied on by the state, he administered a number of psychological tests on Oberacker during the evaluation process conducted in August of 2000. These tests initially included the following: (1) the Minnesota Multiphasic Personality Inventory 2 ("MMPI"); (2) the Personality Assessment Inventory ("PAI"); (3) the Abel Screening test; and, (4) the Abel Questionnaire for Men.
 {¶ 12} The results of the MMPI, which test attempts to measure general personality functioning or characteristics, "were invalid due to a tendency to present more psychiatric symptoms than existed." Tr. 16-17. Dr. Kaplan testified that these results for the MMPI were "not particularly reliable." Tr. 41.
 {¶ 13} The results of the PAI, which test attempts to measure general personality functioning with reference to whether one is amenable to diagnostic and treatment issues, were also invalid "due to difficulties responding to the items in a consistent fashion, suggesting some misunderstanding or confusion about what they meant. The Supplemental indices of the PAI indicated that he matched the characteristics more of an alcoholic than a rapist." Tr. 16-17. Due to the unreliability of the main test, the results of the indices attached to the test were also deemed "suspicious" by Dr. Kaplan. Tr. 41-42.
 {¶ 14} The Abel Questionnaire for Men test indicated that Oberacker had a "very low score on the Cognitive Distortion Section, which are typically the kind of thoughts that individuals, who have strong predatory sexual inclinations, would typically have, and he had a very low score in that area." Tr. 17. However, Oberacker scored high on the social desirability section of the Abel Questionnaire, which would indicate "an unwillingness to admit to violations of common social faults," suggesting that Oberacker "may not have admitted to all of his sexual problems," thereby affecting the validity of the Abel Questionnaire results. Tr. 43.
 {¶ 15} Dr. Kaplan opined that Oberacker was primarily interested in older women, but that he molested young girls because he was emotionally immature and intoxicated which served to impair his judgment and remove his inhibitions. Tr. 18. Had he not been intoxicated, it was Dr. Kaplan's judgment that Oberacker, who exhibited a sexual interest in both adult and adolescent females, which is a typical result in the average male according to the Abel Screening test, had a reduced likelihood of molesting girls. Tr. 19, 24-25. Despite maintaining that it was normal for a male to have an interest in adolescent females, Dr. Kaplan agreed that it was not normal to act on these impulses and was not normal to exhibit an interest in children as young as 11 or 12 years of age. Tr. 44.
 {¶ 16} These offenses with the two girls are the only sexually deviant behaviors that Oberacker has admitted to or endorsed to Dr. Kaplan, in other words, he admitted to no other sexual fantasies, compulsions, or masturbatory fantasies involving children or young females. Tr. 19. Dr. Kaplan testified that a hallmark of sexual predators is the presence of these compulsions and/or fantasies and multiple victims, and that he (Dr. Kaplan) would expect to see more than two victims come forward if Oberacker were a sexual predator. Tr. 19, 21-22.
 {¶ 17} The Abel Screening test result, according to Dr. Kaplan, indicated no sexual attraction with children in Oberacker. Tr. 26.
 {¶ 18} Dr. Kaplan next testified that he administered to Oberacker a Static 99 profile and the Minnesota Sexual Offender Screening Tool Revised profile. Tr. 27. These profiles, which are based on the presence of certain characteristics in a given population, are used to gauge the probability of one being a sexual offender. Tr. 27, 32. Dr. Kaplan stated that the Static 99 (which Oberacker scored low on) was only 33% accurate; so 66% of the predictions of Static 99 would be incorrect. Tr. 33, 39. The Minnesota Sexual Offender Screening Tool, which Oberacker scored a high relapse quotient on, is a little more accurate with an accuracy rate of between 45% to 50%; so approximately one-half the time it is inaccurate in its predictions. Tr. 33, 39-40.
 {¶ 19} When asked by the court what characteristics he would most expect to find in people posing a high risk of sexually offending, Dr. Kaplan provided the following: (1) a criminal, or anti-association, personality; (2) compulsions or irresistible behaviors; (3) the presence of psychosis; (4) very low intelligence or mental retardation; (5) unrelated victims; (6) more than one type of sexual deviance. Tr. 29-30. Dr. Kaplan found none of these characteristics in Oberacker, and concluded that it was his opinion that Oberacker is "not likely to commit future sexual acts" because he lacked the psychiatric characteristics. Tr 31-32, 35. Dr. Kaplan then testified that Oberacker's risk of sexually reoffending would increase if he were to be intoxicated while living with young girls. Tr. 36. Dr. Kaplan could not guarantee that Oberacker would abstain from alcoholic consumption in the future or would not "put himself in a situation where he would be living with or in close proximity to adolescents." Tr. 45-47.
 {¶ 20} Dr. Kaplan agreed with Dr. Aronoff's psychiatric report on Oberacker that the following demonstrated factors weighed in favor of Oberacker presenting a higher risk of reoffending: the sexual offense conviction itself; Oberacker's prior conviction for domestic violence; and, one of the adolescent victims herein was not related to him. Tr. 48. However, these three factors were outweighed by the remaining factors which Dr. Kaplan believed were indicative that Oberacker was less likely to sexually reoffend. Tr. 48.
 {¶ 21} Dr. Kaplan noted that there were inconsistencies in Oberacker's version of the events regarding the offenses, which would "lessen the credibility of his rendition of what occurred." Tr. 49.
 {¶ 22} Dr. Kaplan was unfamiliar with the legal classifications of sexually oriented offender and habitual sexual offender, but did consider Oberacker to be merely an alcoholic and drug addict and not a sexual predator. Tr. 50.
 {¶ 23} Oberacker testified on his own behalf at the classification hearing. Tr. 55-61. On direct examination by defense counsel Oberacker stated that while in prison he successfully completed the sexual offender program there over a period of several months. From this program Oberacker claimed to have learned that what he had done was wrong and the role alcohol played in his poor decision making. Tr. 56-57. Oberacker believed that he had matured while in prison and now took full responsibility for his actions, whereas prior to prison he had attempted to place the blame on others for his sexually offending. Tr. 57. Oberacker next claimed that he has no interest in having sexual relations with children in the future. Tr. 58.
 {¶ 24} On cross-examination Oberacker admitted that he had at least ten episodes of sexual intercourse with the girls, was not continuously intoxicated during the commission of the offenses herein, but did provide the two girls alcohol and marijuana. Tr. 58-60. Oberacker next testified that he knew what it was wrong to have sex with children at the time he committed these offenses. Tr. 60.
 {¶ 25} Subsequent to closing arguments by the parties the trial court reserved making its ruling.
 {¶ 26} On January 29, 2002, in open court with counsel and parties present, the trial court classified Oberacker as being a sexual predator, stating in pertinent part the following reasons:
 {¶ 27} "The court has reviewed all the evidence, everything offered at the hearing, and reviewed the statute under 2950.09(B). The court has taken into consideration the age of the victims, the fact that there's more than one victim, the impairment issues that were brought out at the hearing and all the issues brought up at the hearing and the court finds the defendant to be a sexual predator. Exception to the defense on that finding." Tr. 3.
 {¶ 28} In its February 7, 2002 journal entry memorializing this classification, the court stated in pertinent part the following:
 {¶ 29} "The defendant herein, having entered a plea of guilty to or been convicted of a sexually oriented offense on a former day of court, was in open court this day, with counsel present. The court finds and determines that the defendant is automatically classified as a sexual predator pursuant to R.C. 2950.09(A);
 {¶ 30} "Whereupon, the court notified the defendant of all registration duties pursuant to R.C. 2950.03 and hereby orders the sheriff to submit to the court a photograph and the fingerprints of the defendant and to perform all duties contained in Chapter 2950 of the Revised Code.
 {¶ 31} "Original sentence is imposed. Defendant is ordered returned to institution."
 {¶ 32} Oberacker filed his notice of appeal on March 28, 2002 from the order of February 7, 2002. This court granted leave on April 17, 2002 to consider the notice of appeal as a delayed appeal.
 {¶ 33} Appellant-Oberacker presents two assignments of error for review.
 I {¶ 34} The first assignment of error asserts that, "[T]he evidence is insufficient, as a matter of law, to prove by `clear and convincing evidence' that appellant is `likely to engage in the future in one or more sexually oriented offenses." Appellant's brief at 3.
 {¶ 35} In addressing a similarly framed assignment of error by appellant's counsel this court recently stated the following:
 {¶ 36} "This court has recently noted that R.C. 2950.01(E) defines a sexual predator as a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. State v. Winchester
(2001), 145 Ohio App.3d 92, 761 N.E.2d 1125. The burden of proof is on the state to show by clear and convincing evidence that the offender has been convicted of a sexually oriented offense and that the offender is likely to engage in the future in one or more sexually oriented offenses. State v. Eppinger (2001), 91 Ohio St.3d 158, 743 N.E.2d 881.
 {¶ 37} "The Ohio Supreme Court has stated that while it is problematic for the trial court to reach a determination that a defendant will likely re-offend in the future, it is confounding to review on appeal without an adequate record. Eppinger, at 166. The court then discussed the objectives of a model sexual offender classification hearing. First, a record must be created for review. Towards that end, the prosecutor and defense counsel should identify on the record those portions of the trial transcript, victim impact statements, presentence report, and other pertinent aspects of the defendant's criminal and social history that both relate to the factors set forth in R.C.2950.09(B)(2) and are probative of the issue of whether the offender is likely to engage in the future in one or more sexually oriented offenses. The Eppinger Court noted that where the conviction is old, the state may need to introduce a portion of the actual trial record. In any event, a clear and accurate record of what evidence or testimony was considered should be preserved, including any exhibits, for purposes of any potential appeal.
 {¶ 38} "The trial court may also be required to provide expert assistance to the defendant to assist the trial court in determining whether the offender is likely to engage in the future in one or more sexually oriented offenses. Eppinger, supra. Therefore, either side should be allowed to present expert opinion by testimony or written report to assist the trial court in its determination, especially when there is little information available beyond the conviction itself. Id. Finally, the `trial court should consider the statutory factors listed in R.C. 2950.09(B)(2), and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism.' Eppinger, 168, * * *.
 {¶ 39} "In State v. Thompson (2001), 92 Ohio St.3d 584,752 N.E.2d 276, it was determined that the factors set forth by the legislature in R.C. 2950.09(B)(2) are to be used as guidelines. These guidelines provide the framework to assist judges in determining whether a defendant who has committed a sexually oriented offense is a sexual predator. However, these guidelines do not provide an exhaustive list of factors to consider and a trial judge may consider other relevant evidence in determining the issue of recidivism. Id. It is noteworthy that the Thompson court reiterated the pronouncement made in Eppinger, supra, that `the trial court should consider the statutory factors listed in R.C. 2950.09(B)(2) and should discuss on the record the particularevidence and factors upon which it relies in making its determination regarding the likelihood of recidivism.' (Emphasis added in Thompson.)"State v. McCuller, Cuyahoga App. No. 79870, 2002-Ohio-2254, at ¶ 9-12, 2002 Ohio App. LEXIS 2283 at 4-7.
 {¶ 40} In the present case, the first prong of R.C. 2950.01(E) was clearly satisfied when the appellant pled guilty to two counts of rape in violation of R.C. 2907.02. The second prong requires the state to show that the appellant is likely to engage in the future in one or more sexually oriented offenses. The record discloses that the sexual predator hearing was replete with testimony and evidence supporting both parties' viewpoints. The trial court weighed this competing evidence and discussed on the record the evidence and factors it used in arriving at the sexual predator conclusion as specifically required by Eppinger, 91 Ohio St.3d 158
and Thompson, supra. In particular, the trial court noted the following factors at the close of the sexual predator hearing: age of the victims (see former R.C. 2950.09[B][2][c]; current R.C. 2950.09[B][3][c]), the fact that there's more than one victim (see former R.C. 2950.09[B][2][d]; current R.C. 2950.09[B][3][d]), the impairment of the victims through the use of marijuana and/or alcohol (see former R.C. 2950.09[B][2][e]; current R.C. 2950.09[B][3][e]). Considering the substance and results of the expert reports herein, particularly Dr. Aronoff's which indicates a risk by Oberacker to sexually reoffend, the remaining evidence which was before the trial court, and the factors utilized by the court, we cannot conclude that the trial court abused its discretion in determining by clear and convincing evidence that Oberacker poses a risk of sexually reoffending and should be classified as a sexual predator.
 {¶ 41} The first assignment of error is overruled.
 II {¶ 42} The second assignment of error asserts that, "[T]he trial court erred when it entered an order finding the appellant was `automatically found to be a sexual predator' pursuant to R.C. 2950.09(A)." Appellant's brief at 6.
 {¶ 43} Given that the state has the burden to demonstrate that Oberacker has been convicted of a sexually oriented offense and is a risk to sexually reoffend, it is obvious that the trial court was mistaken in determining that Oberacker was "automatically" a sexual predator pursuant to R.C. 2950.09(A). The state concedes this error in the use of the word "automatically" in the trial court's February 7, 2002 judgment entry. Appellee's brief at 7.
 {¶ 44} Accordingly, in agreement with the remedy urged by both parties, the matter is remanded to the trial court for the preparation and entry of a judgment entry nunc pro tunc, as and for February 7, 2002, deleting the word "automatically" from the original entry of February 7, 2002.
 {¶ 45} The second assignment of error is well taken.
Judgment affirmed in part and remanded.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and TERRENCE O'DONNELL, J., CONCUR.